Electronically Filed
Intermediate Court of Appeals
30517
30-MAY-2014
11:36 AM

NO. 30517

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


COLLEEN HANABUSA, Plaintiff-Appellant, v.
DEPARTMENT OF ENVIRONMENTAL SERVICES OF THE CITY
AND COUNTY OF HONOLULU; DEPARTMENT OF PLANNING AND
PERMITTING OF THE CITY AND COUNTY OF HONOLULU; CITY
AND COUNTY OF HONOLULU, Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10; AND
ROE GOVERNMENT ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-2562)


MEMORANDUM OPINION
(By: Nakamura, C.J., Fujise, J., and Circuit Judge Kim, in
place of Foley, Leonard, Reifurth, and Ginoza, JJ., all recused)

The City and County of Honolulu (City) owns two parcels of land, consisting of approximately 200 acres, located at the Waimānalo Gulch on O'ahu (Property). Prior to 2009, the City was using 107.5 of its 200-acre Property to operate the Waimānalo Gulch Sanitary Landfill (WGSL), pursuant to a special use permit issued by the State Land Use Commission (LUC), County Special Use Permit File No. 86/SUP-5 (SUP-5). Under SUP-5, WGSL, the only public landfill on O'ahu permitted to receive municipal solid waste, was to close and cease operations by November 1, 2009.

In December 2008, the City's Department of Environmental Services (DES) filed an application with the City's

Department of Planning and Permitting (DPP) for a new special use permit, County Special Use Permit File No. 2008/SUP-2 (SUP-2). The application sought the use of an additional 92.5 acres of the 200-acre site for expansion of the existing WGSL, and an extension of the time that WGSL could remain in operation. In August 2009, the City's Planning Commission (Planning Commission) approved SUP-2 for "the existing and proposed expansion of WGSL . . . totaling approximately 200.622 acres, until capacity as allowed by the State Department of Health is reached[.]" On October 22, 2009, the LUC adopted the Planning Commission's decision, subject to the imposition of additional conditions.

In support of its application for SUP-2, the DES prepared a final environmental impact statement (Final EIS), which it submitted to the DPP for approval in October 2008. The process of preparing the Final EIS included the DES's publication of an environmental impact statement (EIS) preparation notice on November 23, 2006, and a notice of the draft EIS (Draft EIS) on May 23, 2008. Plaintiff-Appellant Colleen Hanabusa (Hanabusa) submitted comments in response to both the EIS preparation notice and the Draft EIS. On October 13, 2008, the DPP accepted the Final EIS submitted by the DES.

This case arises out of the DPP's acceptance of the Final EIS. Hanabusa filed an eighteen-count complaint in the Circuit Court of the First Circuit (Circuit Court), challenging the legal sufficiency of the Final EIS and seeking declaratory and injunctive relief. The complaint named as defendants the DES, the DPP, and the City (collectively, the "City"). Hanabusa and the City both filed motions for summary judgment. The Circuit Court granted the City's motion and denied Hanabusa's motion, and it entered final judgment in favor of the City.[1]

Hanabusa's primary argument on appeal is that the Final EIS was insufficient and not prepared in good faith because the scope of the landfill project described in the Final EIS was

_____

[1] The Honorable Rom A. Trader presided.

2

different from the scope of the landfill project for which SUP-2 was sought and which the Final EIS was used to justify. In essence, Hanabusa argues that the Final EIS concealed and failed to adequately address the true nature of the project. Specifically, Hanabusa asserts that the Final EIS only addressed the impacts of a 92.5-acre expansion to WGSL, whereas SUP-2 encompassed the use of the entire 200-acre site for landfill operations -- the continued use of the existing 107.5 acre WGSL, as well as the use of the area of the proposed 92.5 acre expansion. Hanabusa also asserts that assuming *arguendo* that the Final EIS can be viewed as covering the project sought by SUP-2, the Circuit Court erred in failing to address each of the allegations in her complaint regarding the insufficiency of the Final EIS.

As explained in greater detail below, we hold that Hanabusa had fair notice that the Final EIS encompassed the entire WGSL site, and not just the area of the proposed expansion; that the Circuit Court did not err in denying Hanabusa's challenge to the sufficiency of the Final EIS; and that the Circuit Court did not err in granting summary judgment in favor of the City. We therefore affirm the Circuit Court's Judgment.

BACKGROUND

I.

WGSL is the only public landfill on O'ahu permitted to receive municipal solid waste. WGSL is located on the Property, two adjacent parcels of land owned by the City in Waimānalo Gulch, O'ahu, designated as tax map key (TMK) numbers (1) 9-2-003:072 and 073. The Property consists approximately of 200 acres and is zoned for agricultural use. A special use permit is necessary to operate a landfill on the Property.

In 1987, the City was first permitted to operate WGSL on approximately 60.5 acres of the Property pursuant to SUP-5, which was issued in that year by the LUC. SUP-5 was amended in 1989 to expand WGSL by approximately 26 acres, and was again

amended in 2003 to expand WGSL by an additional 21 acres, resulting in a total approved area for WGSL of 107.5 acres. In support of the application for SUP-5 and its 1989 amendment, the City's Department of Public Works (now known as the DES) prepared a revised EIS which was accepted by the City's Department of Land Utilization (now known as the DPP) on October 17, 1985. In support of the application for the 2003 amendment to SUP-5, the DES prepared a final supplemental EIS which was accepted by the DPP on January 10, 2003.

The 2003 amendment to SUP-5 was sought because the existing WGSL was "quickly approaching its maximum capacity," with "no feasible alternative that [could] be implemented in time to dispose [municipal solid waste] after the approved landfill capacity is exhausted." In granting the 2003 amendment to SUP-5, the LUC imposed various conditions, including that: (1) a "Blue Ribbon Site Selection Committee shall make its recommendation for a new landfill site to the [Honolulu] City Council by December 1, 2003"; (2) the City Council shall select a new landfill site by June 1, 2004, and if a new site was not selected by that date, the special use permit (SUP-5) would immediately expire; and (3) by May 1, 2008, "the 200-acre property shall be restricted from accepting any additional waste material and be closed[.]"

On May 10, 2004, the LUC extended the deadline for the Honolulu City Council (City Council) to select a landfill site from June 1, 2004, to December 1, 2004. On December 1, 2004, the City Council adopted Resolution 04-348, CD1, FD1, calling for the selection of the WGSL site as the "new" landfill site. The Resolution noted, among other things, that "the [C]ity already owns the property" and that "[t]he site has over 15 years capacity left with further expansion." In 2006, the City Council passed a bill, Bill 37 (2005), C.D. 2, which limited the types of waste that could disposed of at WGSL after May 1, 2007, and required WGSL to be closed after May 1, 2008. On February 28, 2006, the Mayor of the City vetoed Bill 37, C.D. 2, explaining that:

4

given the indisputable facts that (1) the City cannot have a new landfill in operation by May 1, 2008, and (2) for the foreseeable future, the City needs a landfill on island, the Bill's requirement that the Waimanalo Gulch landfill be closed after that date exposes the City to an untenable choice in 2008 between (1) continued illegal operation of the landfill, thereby subjecting the City to possible regulatory fines, injunctions, and other lawsuits, or (2) the cessation of any landfill activity, which will mean no collection of municipal solid waste, island-wide. Neither alternative is acceptable to me, nor to you and your constituents. As such, Bill 37, C.D. 2, cannot be allowed to become law.

. . . [E]ven if a new landfill site is selected this year, the reality of our current situation is that the City will not be able to cease use of the Waimanalo Gulch landfill by May 1, 2008. The planning, permitting and construction of an alternate landfill location will take longer than the two years remaining before that deadline. Other alternatives such as shipping off-island or new technologies have many issues, familiar to the Council, which will not be resolved before May 1, 2008. However reluctantly, the City must therefore seek to extend the permits for operating the Waimanalo Gulch landfill in any event.

Mayor's Message No. 037, February 28, 2006 (footnote omitted). On March 14, 2008, the LUC extended the deadline for closing WGSL from May 1, 2008, to November 1, 2009.

In December 2008, the DES submitted an application for a new special use permit, SUP-2, to authorize the expansion of the existing WGSL by an additional 92.5 acres so that the entire 200-acre Property -- the 107.5 acres already being used by WGSL plus the proposed 92.5 acre expansion area -- could be used for landfill operations. The DES stated that it would withdraw the existing special use permit, SUP-5, which authorized the existing WGSL and accessory uses on 107.5 acres of the Property, if SUP-2 was approved.

On August 4, 2009, the Planning Commission approved the DES's application for SUP-2 and approved "a new [special use permit] for the existing and proposed expansion of WGSL . . . totaling approximately 200.622 acres, until capacity as allowed by the State Department of Health is reached," subject to a

number of conditions.[2/] On October 22, 2009, the LUC adopted the Planning Commission's decision and approved SUP-2, subject to the imposition of additional conditions.[3/]

## II.

Prior to, and in support of its application for SUP-2, the DES prepared a Final EIS. As part of the process for preparing the Final EIS, the DES, on November 23, 2006, published an EIS preparation notice to notify the public of its proposed expansion of WGSL and the 30-day consultation period. The EIS preparation notice stated: "The [DES] has submitted an EIS preparation notice for the Waimanalo Gulch Sanitary Landfill

---

[2/] Concurrent with its application for SUP-2, the DES had submitted a petition to the LUC for a district boundary amendment to reclassify the 200-acre Property from Agricultural District to Urban District. The district boundary amendment was an alternative method (to SUP-2) to obtain approval to expand the existing WGSL by an additional 92.5 acres so that the entire 200-acre site could be used for landfill operations. The application for the district boundary amendment was subsequently withdrawn.

[3/] Hanabusa, Maile Shimabukuro, and the Ko Olina Community Association were allowed to intervene in the DES's application for SUP-2 before the Planning Commission, and a contested case hearing was held. SUP-2 was the subject of additional litigation that culminated in a case before the Hawaiʻi Supreme Court. See Dep't of Envtl. Servs. v. Land Use Comm'n, 127 Hawaiʻi 5, 275 P.3d 809 (2012). The issue before the Hawaiʻi Supreme Court was whether the LUC's imposition of Condition 14 to SUP-2 "was supported by substantial evidence in the record as whole." Id. at 14, 275 P.3d at 818. Condition 14 prohibited WGSL "from accepting municipal solid waste (or any other waste besides ash and residue from H-POWER) after July 31, 2012." Id. at 6, 10, 275 P.3d at 810, 814. The supreme court held that "LUC Condition 14 is not supported by substantial evidence in the record," and that the restrictions imposed by Condition 14 were contrary to the findings of the Planning Commission which the LUC had adopted. Id. at 17, 275 P.3d at 821. The court noted:

> the Planning Commission's Findings of Fact clearly demonstrate the continuing need to dispose of municipal solid waste at WGSL beyond July 31, 2012. For example, the Planning Commission acknowledged [Chief of the DES, Refuse Division] Mr. Doyle's testimony that "it would take more than seven years to identify and develop a new landfill site." The Planning Commission also found that "a landfill is currently necessary for proper solid waste management," and that "WGSL is the only permitted public [municipal solid waste] facility on the island of Oahu." Moreover, the Planning Commission's Decision and Order expressly provides that [municipal solid waste] may be deposited at WGSL's expanded site "until capacity as allowed by the State Department of Health is reached."

Id. (brackets omitted). The supreme court concluded that Condition 14 could not stand, and it directed that the matter be remanded to the LUC for further proceedings. Id. at 17-19, 275 P.3d at 821-823.

expansion. It provides municipal and solid waste disposal for all of Oʻahu, . . . including Municipal Solid Waste (MSW); recycling residue; and Honolulu Program of Waste Energy Recovery (H-POWER) ash, residue, and unacceptable waste." The EIS preparation notice further stated:

> The landfill has been in operation since 1989 and has capacity remaining for at least 15 years. The [City] proposes to expand the use of the Waimanalo Gulch Sanitary Landfill beyond May 1, 2008, when the approved State Special Use Permit calls for the closure of the landfill from the acceptance of municipal waste (excluding H-POWER ash, residue, and unacceptable waste).
>
> . . . Approximately 92.5 acres of the 200 acre property is unused and is proposed for landfill expansion.

On May 23, 2008, the DES published notice of the Draft EIS, thereby commencing the 45-day review period. The public notice of the Draft EIS provided in relevant part:

> The Draft EIS reports that the proposed expansion to Waimanalo Gulch Sanitary Landfill (WGSL) is anticipated to generate potential adverse impacts as follows: modification to the existing landforms, dust, mud tracking onto highway, noise and odors and other air emissions, cultural resources, views, windblown litter, possible release of leachates into the brackish groundwater, perception of environmental injustice, and traffic hazards. The [Draft EIS] contains measures to mitigate the potential for adverse impacts. Regarding project benefits, the project will provide a municipal solid waste disposal site for the next approximately 15 years within the same valley thereby precluding the Applicant from developing another site for landfill purposes and thus avoiding impacts to other Oʻahu communities if a new site were developed.

(Emphasis added.)

Hanabusa submitted comments to the DES in an 8-page letter dated August 30, 2006, submitted before the publication of the EIS preparation notice; in a 6-page letter dated December 26, 2006, submitted in response to the EIS preparation notice; and in a 24-page letter dated July 7, 2008, submitted in response to the Draft EIS. Hanabusa's letters containing her comments were included in the Final EIS along with the DES's response to the comments.

Both the Draft EIS and the Final EIS, in the "Executive Summary" Section, under the heading "Proposed Action," describe the proposed action as follows:

> The Waimanalo Gulch Sanitary Landfill (WGSL) is an essential and necessary City & County of Honolulu facility that provides municipal and solid waste disposal for all the communities of Oʻahu. Refuse that is disposed of at the landfill includes Municipal Solid Waste (MSW); recycling residue; and, Honolulu Program of Waste Energy Recovery (H-POWER) ash and residue. The landfill has been in operation since 1989 and has capacity remaining with the unused 92.5 acres of the approximately 200 acre property for an estimated minimum life of approximately 15 years. This will extend the use of the site beyond November 1, 2009, the date the amended State Special Use Permit will prohibit the further acceptance of waste at the WGSL.
>
> In addition to the expansion of the area of landfilling, the proposed project will involve the development of landfill associated support infrastructure (e.g., drainage, access roadways, landfill gas and leachate collection and monitoring systems, stockpile sites and other related features), a public drop off center, and a landfill gas to energy (LFGTE) system.

(Footnotes omitted.)

The DES submitted the Final EIS, entitled "Final Environmental Impact Statement, Waimānalo Gulch Sanitary Landfill Lateral Expansion, Waimānalo Gulch, Oʻahu, Hawaiʻi, TMKs: (1)9-2-003: 072 and 073," which was dated October 10, 2008, to the DPP. By letter dated October 13, 2008, the DPP accepted the Final EIS. Notice of the DPP's acceptance of the Final EIS was published on October 23, 2008.

III.

On December 11, 2008, Hanabusa filed a "Complaint for Declaratory Judgment and Injunctive Relief" against the City in Circuit Court. In her complaint, Hanabusa alleged that "[a]t all relevant times, Hanabusa is a resident of the Leeward Coast in the City and County of Honolulu . . ., an owner of a home located across Waimanalo Gulch Sanitary Landfill . . ., as well as a duly elected State Senator for the 21st Senatorial District representing residents of the Leeward Coast." Hanabusa's complaint consisted of eighteen counts, which alleged that

8

numerous aspects of the Final EIS, including the manner in which it was compiled, were "insufficient and unacceptable."

Hanabusa and the City filed competing motions for summary judgment. After a hearing held on March 16, 2010, the Circuit Court granted the City's motion for summary judgment and denied Hanabusa's motion for summary judgment. The Circuit Court ruled, in relevant part, that:

> 2. [Hanabusa] had ample notice that [the] 2008 [Final EIS] considered the entire 200-acre landfill property and was not limited to just the 92.5-acre expansion area.
>
> 3. [Hanabusa] did not comment on the alleged failure of the 2008 [Final EIS] to consider the entire 200-acre property in her written comments dated August 30, 2006, in her written comments on the Environmental Impact Statement ("EIS") Preparation Notice dated December 26, 2006, or in her written comments on the Draft EIS for the 2008 [Final EIS] dated July 7, 2008, or in the Complaint filed herein.
>
> 4. [Hanabusa] lacks standing to challenge the sufficiency of the 2008 [Final EIS] regarding its alleged failure to address the entire 200-acre property, as she failed to identify and discuss this matter in her written comments, as required by [Hawaii Revised Statutes (HRS)] § 343-7(c).
>
> 5. Alternatively, even if [Hanabusa] has standing to challenge the sufficiency of the 2008 [Final EIS] for its alleged failure to address the entire 200-acre property, the 2008 [Final EIS] is legally sufficient, as it adequately discloses facts to enable a decision-maker to render an informed decision under the "rule of reason." See Price v. Obayashi Hawaii Corp., 81 Hawai'i 171, 914 P.2d 1364 (1996).
>
> 6. The 2008 [Final EIS] was compiled in good faith and sets forth sufficient information to enable the decision-maker to consider fully the environmental factors involved and to make a reasoned decision after balancing the risks of harm to the environment against the benefits to be derived from the proposed action, as well as to make a reasoned choice between alternatives.
>
> 7. The 18 claims set forth in the Complaint, alleging various insufficiencies in the 2008 [Final EIS], are not supported by an examination of the 2008 [Final EIS], which is thorough and was compiled through lawful procedure.

The Circuit Court entered its Final Judgment in favor of the City and against Hanabusa on April 21, 2010. This appeal followed.

9

STANDARDS OF REVIEW

I.

An appellate court reviews the trial court's grant of summary judgment *de novo*, under the same standard applied by the trial court. Yoneda v. Tom, 110 Hawai'i 367, 371, 133 P.3d 796, 800 (2006).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the [inferences] drawn therefrom in the light most favorable to the party opposing the motion.

Id. (brackets and citation omitted). In reviewing the trial court's grant of summary judgment, an appellate court's consideration of the record is limited to those materials "that were considered by the trial court in its determination of the motion." Munoz v. Yuen, 66 Haw. 603, 605-06, 670 P.2d 825, 827 (1983).

II.

"[T]he sufficiency of an environmental impact statement is a question of law, which is properly addressed through the summary judgment procedure." Price v. Obayashi Hawaii Corp., 81 Hawai'i 171, 182, 914 P.2d 1364, 1375 (1996). "This is because the only question presented is whether the EIS complies with applicable statutory mandates, such as [Hawaii Revised Statutes (HRS)] chapter 343 and EIS Rules chapter 200. There are no factual determinations to be made regarding EIS adequacy." Id.

In evaluating the sufficiency of an EIS, Hawai'i courts apply the "rule of reason" standard to "determine whether an EIS is legally sufficient in adequately disclosing facts to enable a decision-making body to render an informed decision." Id. Under this standard:

> an EIS need not be exhaustive to the point of discussing all possible details bearing on the proposed action but will be

10

> upheld as adequate if it has been compiled in good faith and sets forth sufficient information to enable the decision-maker to consider fully the environmental factors involved and to make a reasoned decision after balancing the risks of harm to the environment against the benefits to be derived from the proposed action, as well as to make a reasoned choice between alternatives.

Id. (quoting Life of the Land v. Ariyoshi, 59 Haw. 156, 164-65, 577 P.2d 1116, 1121 (1978)).

"[A] court's role, in evaluating whether the EIS complies with statutory requirements, is very narrow." Id. at 182 n.12, 914 P.2d at 1375 n.12. In Price, the Hawai'i Supreme Court cited with approval the following principles for evaluating the sufficiency of an EIS that were set forth by the federal court in Stop H-3 Ass'n v. Lewis, 538 F.Supp. 149 (D. Haw. 1982):

> A court is not to substitute its judgment for that of the agency as to the environmental consequences of its action. Rather, the court must ensure that the agency has taken a "hard look" at environmental factors.

> If the agency has followed the proper procedures, its action will only be set aside if the court finds the action to be "arbitrary and capricious," given the known environmental consequences.

> The court should not be used as a quasi-legislative or quasi-executive forum by those who are dissatisfied with policy decisions made by governing bodies. The environmental laws were neither meant to be used as a "crutch" for chronic fault-finding, nor as a means of delaying the implementation of properly accepted projects.

Price, 81 Hawai'i at 182-83 n.12, 914 P.2d at 1375-76 n.12 (brackets omitted) (quoting Stop H-3 Ass'n, 538 F.Supp. at 159).

Neither HRS Chapter 343, nor the applicable rules, "indicate the level of detail or specificity that should be included [in an EIS] on any given subject. The statute and rules were designed to give latitude to the accepting agency as to the content of each EIS." Id. at 183, 914 P.2d at 1376.

DISCUSSION

I.

Hanabusa's primary argument on appeal is that the Final EIS was insufficient and not prepared in good faith because the scope of the project described in the Final EIS was different than the project for which SUP-2 was sought. Specifically,

Hanabusa claims that the Final EIS only addressed the impacts of a 92.5 acre expansion to WGSL and therefore could not be used to support SUP-2, which encompassed the use of the entire 200-acre Property for landfill operations. In essence, Hanabusa argues that the Final EIS concealed and failed to adequately address the true nature of the proposed project.

The City, citing HRS § 343-7(c) (2010),[4] argues that Hanabusa lacks standing to challenge the Final EIS based on its alleged failure to address the impacts of the landfill operations on the entire 200-acre Property because she did not identify this issue in the written comments she submitted during the EIS review process. Hanabusa counters that she had no notice during the EIS review process that the DES's proposed action encompassed the entire 200-acre Property and thus had no reason to submit comments challenging the scope of the EIS.

The question of whether Hanabusa is barred from raising a challenge to the scope of the Final EIS is dependent upon and intertwined with our analysis of whether the EIS review process and the Final EIS sufficiently disclosed and addressed a proposed project that encompassed landfill operations on the entire Property. We therefore begin with this analysis.

II.

We conclude that the Final EIS sufficiently described the proposed project as encompassing landfill operations on the entire Property and sufficiently addressed the impacts of landfill operations on the entire Property. We further conclude

---

[4] HRS § 343-7, entitled "Limitation of actions," provides in relevant part:

> (c) Any judicial proceeding, the subject of which is the acceptance of an environmental impact statement required under section 343-5, shall be initiated within sixty days after the public has been informed pursuant to section 343-3 of the acceptance of such statement. . . . Affected agencies and persons who provided written comment to such statement during the designated review period shall be adjudged aggrieved parties for the purpose of bringing judicial action under this subsection; <u>provided that the contestable issues shall be limited to issues identified and discussed in the written comment</u>.

(Emphasis added.)

12

that Hanabusa had fair notice that the DES was preparing the Final EIS to support the use of the entire 200-acre Property for landfill operations.

A.

The context in which the EIS review process was conducted is significant. The DES initiated the EIS review process with the publication of the EIS preparation notice in November 2006. At that time, pursuant to a special use permit, WGSL was authorized to conduct landfill operations on 107.5 acres of the 200-acre Property and was the only municipal landfill on O'ahu permitted to receive municipal solid waste. In 2004, the City Council had selected the WGSL site as the "new" landfill site, noting that the City already owned the Property and that the site had "over 15 years capacity left with further expansion." In 2006, the Mayor vetoed a bill that would have limited the types of waste that could be disposed of at WGSL and would have required the closure of WGSL after May 1, 2008, explaining that a landfill was necessary on O'ahu for the foreseeable future and that the City could not have a new landfill in operation by May 1, 2008. In March 2008, the LUC extended the deadline for the closure of WGSL from May 1, 2008, to November 1, 2009.

Given this context, it is clear that the DES's proposed project to expand WGSL by 92.5 acres was to increase the extent of landfill operations on the Property from the existing 107.5 acres to the entire 200-acre Property. In other words, the DES sought to continue the existing landfill operations and expand it to unused portions of the Property. Certainly, there was no suggestion or indication that the DES intended to abandon landfill operations on the 107.5 acres WGSL was already using, and that the proposed expansion project would result in a contraction of the landfill. Nor was there any indication or suggestion that the DES was proposing to create an entirely new

13

92.5-acre landfill that was not connected to the existing landfill operations.

B.

The Final EIS, as well as the other materials published by the DES during the EIS review process, disclosed and provided fair notice that the proposed expansion project would encompass the entire 200-acre Property. The EIS preparation notice described the project as a proposal "to expand the use of the [WGSL]" beyond its then-existing May 1, 2008, closure date. Both the Draft EIS and the Final EIS, describe the proposed action and project in terms of expanding the use of the existing landfill to encompass the entire Property.

For example, in both the Draft and Final EIS, the "Executive Summary" Section, under the heading "Proposed Action" states:

> The landfill has been in operation since 1989 and has capacity remaining with the unused 92.5 acres of the approximately 200 acre property for an estimated minimum life of approximately 15 years. This will extend the use of the site beyond November 1, 2009, the date the amended State Special Use Permit will prohibit the further acceptance of waste at the WGSL.

(Emphasis added; footnote omitted.) The "Project Background" Section also states that "[t]he proposed project to expand the use of the [WGSL] will extend the use of the site beyond November 1, 2009[.]" (Footnote omitted.) Both the Draft and Final EIS, under the heading "Project Location and Area of Use," refer to the area of the site as 200 acres, comprised of 107.5 acres currently used for landfill operations and 92.5 acres "proposed to be used for the future expansion of the site." In addition, both the Draft and Final EIS are replete with references to the entire 200-acre Property and landfill operations relevant to the entire Property, not just the proposed 92.5-acre expansion.

C.

Comments received in response to the EIS preparation notice and Draft EIS provide further proof of the general understanding that the proposed action encompassed the entire Property, and not just the 92.5-acre expansion area. These

comments referred to matters pertaining to the entire 200-acre Property or the 107.5 acres already being used for landfill operations.

Moreover, as the City argues, "[a]n expansion, by its very definition, is to increase in size or to enlarge or to spread out." The word "expansion" is defined as "the act or process of expanding," and the word "expand" means "to increase in extent, size, volume, scope, etc." Expansion Definition, DICTIONARY.COM, http://dictionary.reference.com/browse/expansion (last visited May 29, 2014); Expand Definition, DICTIONARY.COM, http://dictionary.reference.com/browse/expand (last visited May 29, 2014). Viewed in context, we conclude that the Final EIS, and the other materials published by the DES during the EIS review process, adequately disclosed that the proposed project to expand WGSL by an additional 92.5 acres encompassed landfill operations on the entire 200-acre Property.

D.

A review of the Final EIS reveals that it addressed the impacts of landfill operations on the entire 200-acre Property. The Final EIS discussed practices and procedures applicable to activities at WGSL affecting the entire Property such as: procedures for excluding or controlling the dumping of hazardous material; the practices for the unloading and compaction of waste; and the special treatment of certain types of waste. It described the climate and rainfall, topography, geology, and soil composition of the entire site. It also discussed the existing and planned drainage control system and the surface water plan for the entire Property. The Final EIS provided a discussion of groundwater and air quality control, and mitigation measures, for both the existing site and proposed expansion area. The Final EIS also cited the previous environmental impact statements prepared with respect to SUP-5 and the amendments thereto.

E.

For all the foregoing reasons, we do not agree with Hanabusa's argument that the Final EIS concealed and failed to adequately address the true nature of the proposed project. We conclude that the Final EIS sufficiently described the proposed project as encompassing landfill operations on the entire 200-acre Property, and that it covered the project for which SUP-2 was sought. We also agree with the Circuit Court that Hanabusa had fair notice that the project under consideration included the entire 200-acre landfill property. We therefore conclude that Hanabusa's failure to contest the scope of the EIS in her written comments during the EIS review period bars her from raising the claim that the Final EIS was insufficient, and not prepared in good faith, because it described a project that was different than the project for which SUP-2 was sought. See HRS § 343-7(c); Price, 81 Hawaiʻi at 183, 914 P.2d at 1376 (limiting judicial consideration of challenges to the sufficiency of an EIS to concerns listed in comments submitted during the review period). In any event, as our previous discussion reveals, even assuming arguendo that Hanabusa is not barred from raising this claim, we conclude that it fails on the merits.

III.

Hanabusa argues that, in granting the City's motion for summary judgment, the Circuit Court erred in failing to address each of the allegations regarding the insufficiency of the Final EIS raised in her eighteen-count complaint. Hanabusa, however, does not present any authority for the proposition that the Circuit Court was required to specifically address, or make an individual ruling on, each of the allegations of insufficiency in her complaint in order to grant summary judgment. Based on our review of the record, we conclude that in granting the City's motion for summary judgment, the Circuit Court properly and adequately considered the allegations in Hanabusa's complaint.

16

In her appeal, Hanabusa challenges the sufficiency of the Final EIS in several respects. HRS § 343-2 (2010) defines an EIS, in relevant part, as

> an informational document prepared in compliance with the rules adopted under section 343-6 and which discloses the environmental effects of a proposed action, effects of a proposed action on the economic welfare, social welfare, and cultural practices of the community and State, effects of the economic activities arising out of the proposed action, measures proposed to minimize adverse effects, and alternatives to the action and their environmental effects.

As previously noted, we apply the "rule of reason" standard in evaluating the sufficiency of an EIS. Under this standard:

> an EIS need not be exhaustive to the point of discussing all possible details bearing on the proposed action but will be upheld as adequate if it has been compiled in good faith and sets forth sufficient information to enable the decision-maker to consider fully the environmental factors involved and to make a reasoned decision after balancing the risks of harm to the environment against the benefits to be derived from the proposed action, as well as to make a reasoned choice between alternatives.

Price, 81 Hawai'i at 182, 914 P.2d at 1375.

The Final EIS was thorough and comprehensive, consisting of 3 volumes and over 1900 pages. It discussed, among other things, the setting and potential impacts of the proposed project with respect to the following topics: climate and rainfall, topography, geology, surface water, groundwater and hydrology, natural hazards, air quality, acoustic characteristics, flora and fauna resources, scenic and aesthetic environment, traffic and circulation, wastewater, potable/drinking water, power and communications, public services, socioeconomic characteristics, land use and ownership, historic and archaeological resources, and cultural impacts. The Final EIS was supported by numerous studies included in volumes 2 and 3, and it cited the previous environmental impact statements prepared with respect to SUP-5 and the amendments thereto.

Hanabusa argues that the Final EIS was inadequate because it was "self-serving," the "outcome was predetermined," and it failed to address alternatives. However, Section 9 of the

17

Final EIS discussed alternatives to the proposed expansion of WGSL including: taking no action; the transshipment of waste off-island; the use of alternative technologies such as anaerobic digestion, aerobic digestion, hydrolysis, thermal technologies, waste to energy, and increased recycling; and alternative landfill locations. The Final EIS concluded that taking no action would result in unacceptable health, safety, and economic impacts to Oʻahu communities, and that transshipment off-island could only reduce, but not replace, the need for a municipal landfill and also had "major issues" (discussed in the Final EIS) associated with it. The Final EIS noted that while some alternative technologies show promise, none "are capable of completely eliminating the need for a municipal landfill." As to alternative landfill locations, the Final EIS discussed in detail a selection process that began with 45 potential sites and was narrowed to 5 sites that included the WGSL site. The Final EIS also explained its conclusion that continued use of the WGSL site was the preferred alternative.

Hanabusa also contends that the Final EIS was inadequate and showed that "the City did not take a hard look at the environmental factors" because it failed to adequately address her claims regarding: (1) "the Notice of Violations, Schnitzer Steel case[,] and the Secondary Impacts of the landfill operations"; (2) "the concerns over the Economic Impact upon Ko Olina and the Cultural aspects"; (3) the stability of the landfill for which WGSL was cited in the Notice of Violations; (4) "the need to blast the mountain to create the air space"; (5) the cumulative impact of the project; and (6) public trust resources, cultural resources, and constitutional issues. However, Hanabusa does not provide significant details or argument with respect to these claims, or cite legal authority that persuades us. Based on our review of the record, we agree with the Circuit Court that the Final EIS was sufficient and that it "was compiled in good faith and sets forth sufficient information to enable the decision-maker to consider fully the

18

environmental factors involved and to make a reasoned decision after balancing the risks of harm to the environment against the benefits to be derived from the proposed action, as well as to make a reasoned choice between alternatives."

CONCLUSION

For the foregoing reasons, we affirm the Circuit Court's Final Judgment.

DATED:  Honolulu, Hawai'i, May 30, 2014.

On the briefs:

Colleen Hanabusa,
Pro Se Plaintiff-Appellant

Gary Y. Takeuchi,
Jesse K. Souki,
Sharon Lam Blanchard, and
Dana M. Viola,
Deputies Corporation Counsel,
City and County of Honolulu,
for Defendants-Appellees

*Craig H. Nakamura*

Chief Judge

*Alexa M. Fujise*

Associate Judge

*Glenn J. L___*

Acting Associate Judge

19